THOMAS BENNETT, JR., & others, *vs.* CITY OF NEW BEDFORD.

A city government, having authority to lay down sewers, ordered that an appropriation be made for the purpose of constructing a sewer, (describing its situation,) and that the committee on finance be authorized to raise the money. *Held*, on a bill in equity by tax payers of the city to restrain the construction of the sewer, that this was a sufficient location of the sewer.

An order locating a sewer and voting an appropriation to construct it was introduced in the common council of a city, was passed, sent up to the board of aldermen for concurrence, and passed by them also, all on the same day. The record of the proceedings did not state that the order was passed by a two thirds' vote or by a yea and nay vote; and at the next meeting of the common council it was voted to reconsider the order. A joint rule of the common council and board of aldermen provided that no debt should be created unless the resolution authorizing it should pass by the votes of two thirds of the whole number of each branch of the city council, voting by yeas and nays; and the rules of the common council provided that a motion might be reconsidered at the same meeting at which it was passed, or at the next meeting; that all ordinances and resolutions should have two several readings before they were passed; and that no order au-

---

thorizing the expenditure of money should be read twice on the same day. *Held,* on a bill in equity by tax payers of the city to restrain the construction of the sewer, that the sewer was properly located.

A structure under ground constructed by a city, not only to carry off the sewage from the streets and houses, but also to divert the waters of a brook, is a common sewer within the meaning of a provision in the city charter authorizing the city to lay out common sewers.

BILL IN EQUITY by Thomas Bennett, Jr., and eleven others, alleging that they were citizens and tax payers of New Bedford; that the defendants, through their officers, were proceeding to construct a subterranean aqueduct through Willis Street from a brook west of County Street to the Acushnet River, for the purpose of diverting the waters of the brook from their natural channel; that the defendants falsely pretended that this aqueduct was a common sewer, and intended to treat it as such; that the work would require a great expenditure of money; that the defendants proposed to assess the same upon the taxable inhabitants; and that the defendants were acting without lawful authority. The prayer was that the defendants might be enjoined from continuing the work. The answer denied that the case was within the equity jurisdiction of this court, and alleged that there was an existing necessity for the sewer, and that the proceedings under which it was constructed were according to law.

At the hearing, before *Ames,* J., it appeared that the plaintiffs were tax payers; that the city ordinances provided that " the mayor and aldermen shall cause to be constructed and kept in repair all main drains and common sewers which shall be ordered by the city council to be laid down through any streets or private lands within the city; " that on May 31, 1872, the committee of the city council on roads, bridges, main drains and common sewers reported that the sewer in question ought to be built; and that the following proceedings were had in the city council:

" City of New Bedford, in Common Council, June 6, 1872. Ordered, That a special appropriation for the sum of sixteen thousand dollars be and the same is hereby made for the purpose of constructing a sewer through Willis Street, commencing at .he brook west of County Street, and continuing to the river. Also, for the continuation of Sycamore Street sewer from Pleasant Street to enter into the Willis Street sewer; and the committee

on finance are hereby authorized to raise the same in such manner as they may deem for the best interest of the city. Adopted and sent up for concurrence. Yeas 19, nays 1. William A. Church, Clerk. In Board of Aldermen, June 6, 1872. Concurred. Henry T. Leonard, City Clerk."

" City of New Bedford, in Common Council, June 19, 1872. Ordered, That the vote whereby the order appropriating the sum of sixteen thousand dollars, for the purpose of constructing a sewer through Willis Street, commencing at the brook west of County Street and continuing to the river, and also for the construction of the Sycamore Street sewer from Pleasant Street to enter into the Willis Street sewer be reconsidered. Adopted and sent up for concurrence. William A. Church, Clerk. In Board of Aldermen, June 19, 1872. Non-concurred and sent down. Henry T. Leonard, City Clerk."

It further appeared that the mayor and aldermen proceeded under the order of June 6, 1872, to construct the sewer in question.

The plaintiffs put in evidence the following joint rule of the city council : " After the annual appropriations shall have been passed, no subsequent expenditure shall be authorized for any purpose unless provision for the same shall be made by specific transfer from some of the appropriations contained in the annual resolutions, or by creating therefor expressly a city debt; but no such debt shall be created unless the resolution authorizing the same shall pass by the votes of two thirds of the whole number of each branch of the city council, voting by yea and nay ; " and also the following rules and orders of the common council : " When a motion has once been made and carried in the affirmative or negative, it shall be in order for any member voting with the majority to move a reconsideration, and if such motion is seconded it shall be open to debate, and be disposed of by the council. And, in case the motion be made at the same meeting, it shall be competent for a majority of the members present to pass a vote of reconsideration ; but if it be not made until the next meeting the subject shall not be reconsidered, unless a majority of the whole council shall vote therefor. But no more than one

motion for reconsideration of any vote shall be permitted. All ordinances and resolutions shall have two several readings, before they shall be finally passed by this council; they shall then be enrolled by the clerk, and the committee on enrolled ordinances shall, as soon as may be, examine them, and certify on the back thereof that they are duly enrolled. No ordinance, order or resolution imposing penalties, or authorizing the expenditure of money, shall have more than one reading on the same day."

The plaintiffs also introduced evidence tending to show that the proposed sewer was much larger than the other sewers in the city; that it was intended to drain and divert the waters of a brook at the upper or western end thereof, as well as to carry off the sewage on the line of the street; and that there was no present need of the sewer for sewage purposes.

The defendants introduced evidence, against the plaintiffs' objection, that by the usage of the common council such orders for ten years past had been adopted without a second reading.

The judge found that "the scheme of sewage proposed in behalf of the defendants was *bona fide;* was an effectual and reasonable method of providing for the sewerage of the houses on the various streets in that part of the city, and for the protection of the streets; and was an appropriate and the best method of draining the surplus waters of the brook;" and he reserved the case for the consideration of the full court.

*G. Marston*, for the plaintiffs.

*T. M. Stetson*, for the defendants.

COLT, J. The plaintiffs, citizens and tax payers of New Bedford, allege that the officers of that city are proceeding to construct an aqueduct for the purpose of diverting the water of a certain brook into it, intending also to use it as a common sewer; and that this work requires a large expenditure of money, which must eventually come from the taxable inhabitants, and is undertaken without authority of law. An injunction is asked to restrain the further progress of the work.

The answer denies the equity jurisdiction of the court in this case, and avers an existing necessity for the sewer in question, and the legality of the proceedings under which it is constructed.

It is not necessary to consider the question of jurisdiction, because we find nothing in the case to invalidate the proceedings of the city as against those whose private rights of property are not affected and whose only interest is that of tax payers.

The city charter, St. 1847, *c.* 60, § 14, provides that "the city council shall have authority to cause drains and common sewers to be laid down through any street or private lands." An ordinance of the city requires that "the mayor and aldermen shall cause to be constructed and kept in repair all main drains and common sewers which shall be ordered by the city council to be laid down through any streets or private lands within the city." On June 6, 1872, it was ordered by the common council that a special appropriation of a sum named in the order be made "for the purpose of constructing a sewer through Willis Street, commencing at the brook west of County Street, and continuing to the river. Also for the continuation of Sycamore Street sewer from Pleasant Street to enter into the Willis Street sewer." And the committee on finance were authorized to raise the sum named in such manner as they might deem for the best interest of the city. This action of the common council was sent up for concurrence, and was concurred in by the board of aldermen on the same day, and the construction of the sewer was subsequently ordered by them.

It is objected that this vote is not sufficiently specific and definite for the legal location of a sewer. It is indeed in the form of an appropriation of money, but we think it sufficiently shows an intention to establish the sewer in question, and sufficiently defines its location; no set form of words is required, and the purpose could not be more plainly stated, if the vote had been divided into one making a location and another an appropriation for it.

It is also objected that the order was passed in violation of the rules and orders of the common council which require that votes of this description shall have two several readings on different days, and may be reconsidered at the same meeting in which they are passed or at the next meeting after; and that the vote in fact was reconsidered at the next meeting. But the answer to

this is that the rules referred to are ru.es governing the order and routine of business, intended as securities against hasty and inconsiderate action, which, in every deliberative body, acting within the powers conferred, may be abolished, modified or waived at will. It is essential that the vote of June 6 should appear to have been treated as the final action of the board, and this is shown by the fact that it was then adopted and sent up to the aldermen for concurrence. This is evidence that the requirements relied on were waived by the authority which imposed them. And the objection cannot be made by these parties effectual to defeat its action. Cooley on Const. Limit. 131.

Nor is it any objection that the work to be done may create a city debt, and that no debt, by the joint rules and orders of the city government, can be- created but by joint resolution and by yea and nay vote of two thirds in each branch, for, in addition to the reasons above given, it is sufficient that every reasonable presumption must be made in favor of the legality of the action of the city government in the performance of its functions, and there is nothing to show affirmatively that the vote in question was not passed in conformity to the rules.

The proposed use of this structure for conducting of the waters of a natural stream does not change its character as a common sewer; one appropriate use of which may be to relieve from the natural as well as the surface flow of water.

*Bill dismissed, without costs.*