JOHN J. SHEEHAN *vs.* CITY OF FITCHBURG.
JAMES McCARTY *vs.* SAME.
MARGARET McGINNESS *vs.* SAME.
NATT COWDIN & another *vs.* SAME.
OWEN HARRIGAN *vs.* SAME.

Worcester.   Oct. 4. — Nov. 23, 1881.   LORD & ALLEN, JJ., absent.

A town passed a vote "to take measures to let out the building of sewers in W., F. and R. Streets," and afterwards voted to take land for a sewer at the junction of R. and F. Streets, "thence to the river," of a certain width. A sewer was subsequently built through the entire length of F. Street, and also through a portion each of W. and R. Streets; and plans made at the time of the construction of the sewers, showing their size and location, were placed on file with the proper officials of the town. Three years after the passage of the first order, the town having in the mean time received a city charter, a resolution

was passed by the board of aldermen "that the superintendent of streets be directed to proceed to build the sewer in W. Street;" and, after this order, some change in grade in the sewer before built in W. Street was made, and the sewer extended in length. *Held*, that the original location of the sewers was invalid by reason of uncertainty; that such uncertainty was not aided by the second vote of the town, by the plans filed, or by the order of the town or that of the city, so as to authorize an assessment upon the abutters on the streets named.

An abutter on a street in a town through which a sewer is constructed, who enters the sewer with his private drain by license from the town clerk, by which he agrees to make no claim for damages on account of the work, is not estopped to contest the validity of the order laying out the sewer, under which an assessment is levied upon him.

DEVENS, J.    These are actions to recover the amounts severally assessed on the plaintiffs as owners of estates abutting on Water, First and Railroad Streets in Fitchburg, as their proportional part of the charge of constructing sewers in said streets, which were paid by the plaintiffs after notice of sale of their estates, and after protest.

The plaintiff Sheehan's and the plaintiff Harrigan's estates abut on the street near that part of the sewer in Water Street constructed in 1871 and 1872; the plaintiff McCarty's estate abuts on First Street, the sewer in which was constructed in 1871 and 1872; that of the plaintiff McGinness is near the part of the sewer constructed in Railroad Street in 1871 and 1872; and the plaintiff Cowdin's estate is near that part of the sewer constructed in Water Street in 1874.

In August 1878, assessments were made by the mayor and aldermen of Fitchburg on the plaintiffs of the sums respectively paid by them, as being their proportionate share of the expenditure by the town and city of Fitchburg in the construction of the sewers in the streets on which their estates abutted.

The plaintiffs contend that there were no such proceedings by the proper authorities as to establish the sewers in question as public sewers, for expenditure in the construction of which an assessment is authorized on the abutters.

The defendant relies upon a vote of the selectmen of the town of Fitchburg, passed on September 9, 1871, as legally establishing and laying out the sewers, or the portions thereof constructed in 1871 and 1872. There was no general system of sewers in the town of Fitchburg, and the selectmen in what they did acted

by authority of the Gen. Sts. *c.* 48, and the St. of 1869, *c.* 111. The vote passed by them was in the following words : " Voted to take measures to let out the building of sewers in Water, First and Railroad Streets."

No particular form of words is made necessary by the statute to be used by the authorities in laying out a sewer, but it must be done with sufficient precision to enable those whose rights are to be affected thereby to ascertain where and what the sewer is, for the construction of which they are liable to be assessed, or by the construction of which their estates may receive damage.

The proceedings subsequent to the laying out refer to, and are as of, that date. The liability to assessment is an incumbrance on the property from that date. *Carr* v. *Dooley*, 119 Mass. 294. Alike when it becomes thus liable and when the assessment is afterwards laid, the landowner is entitled reasonably to know what is the extent and character of the sewer for which he is thus liable to be or has been assessed. After the order assessing the landowner, he has three months within which to appeal to a jury if he is dissatisfied with the assessment. Gen. Sts. *c.* 48, § 6. And unless such an order is made, it cannot be determined whether he is entitled to an abatement.

An application for damages must also be made within one year after the passage of the order laying out the sewer. St. 1869, *c.* 111. Gen. Sts. *c.* 43, § 22. The landowner cannot postpone this petition until by actual construction it can be ascertained what the sewer is. That such a petition should be intelligently dealt with, this must appear with reasonable certainty.

An order to take measures to let out the building of certain sewers is preliminary in its character, and may never be consummated by any actual agreement. In the present case, it was a month before any contract was made. If a landowner had made his petition for damages, it might fairly have been contended that no order had been made by which sewers had been laid out, and the petitioner have failed on that account. It is readily distinguishable from an order appropriating money for the construction of certain sewers. Such an order, if in other respects sufficient, does show an establishment of them, as there can hardly be a more definite act than the appropriation of

money. *Bennett* v. *New Bedford*, 110 Mass. 433. *Carr* v. *Dooley*, 122 Mass. 255.

But even if the vote "to take measures to let out" certain sewers be treated as an establishment of them, Are these sewers described with such reasonable definiteness and precision that it can be determined therefrom what are the sewers established? They are described as sewers in certain streets, and this is their only description; but whether they are to be through the whole length of the streets, through a part of each of the streets, or through what part or parts thereof, the order gives no information. A petitioner for damages, by showing an order to build a sewer in a street upon which his estate abutted, would not thereby show an order to build a sewer near his estate. The indefiniteness of the order is nowhere shown more clearly than by the action of the town thereunder. In 1871 and 1872, a sewer was built through the entire length of First Street. In Water Street, which was more than a mile long, a sewer was built for the distance of 989 feet, and a sewer was built in Railroad Street for 517 feet, it being a street of about 700 feet in length. Had a party abutting brought a petition for damages, he certainly could not have shown by this order that any sewer had been established by which he could be affected.

The defendant contends that these cases cannot be distinguished from *Bennett* v. *New Bedford*, and *Carr* v. *Dooley*, *ubi supra*. But in *Bennett* v. *New Bedford*, the city government, having authority to lay down sewers, ordered that an appropriation be made for the purpose of constructing a sewer, described the situation of the sewer and its termini, and authorized the committee on finance to raise the money appropriated. In *Carr* v. *Dooley*, the order of the mayor and aldermen was, "that a common sewer be laid in Cedar Street, from the Crosby Street sewer to Keene Street, the size of the sewer to be twelve inches in diameter, and that the expense of the same be charged to the appropriation for sewers and drains." Both these cases differ from those before us in that a present intention to construct is clearly shown by an appropriation of money, and the sewer to be constructed is clearly defined.

The defendant contends that the deficiency of precision in the record is aided by the plans made at or about the time of the

construction of the sewers, showing their size and location, which were placed on file with the proper officials of the town. But as the order by which the rights of parties, whether those to be assessed, or those entitled to damages, was that which laid out the sewer, it cannot be aided in definiteness by subsequent plans made at the time of construction, any more than it could be by proving what sewer actually was thereafter built. It is to be observed, also, that the order establishing the sewers had no reference to plans then or thereafter to be filed, which were, or were to be, a part of it.

On October 4, 1871, the selectmen voted to take land for a sewer at the junction of Railroad and First Streets, thence to the river, ten feet in width; and this order, as the defendant contends, aids to make the vote of September 9, 1871, definite. But, as heretofore suggested, the order establishing a sewer must be reasonably definite when made, as important rights of parties are then fixed. Apart from this objection, also, all that is shown by this is, that, if the sewers in Railroad and First Streets should be built so as to intersect each other, there would thus be afforded them an outlet to the river. However probable the inference might be that such was the intention, it is not expressed, nor is there any legal inference of it. And if expressed, it would not show the extent of the sewers except as to one of their termini.

The defendant further contends that the Superior Court erred in ruling, as matter of law, that the location was invalid by reason of uncertainty, and that it was a question of fact. But this is not the case where an existing object is sought to be identified by a description more or less imperfect, as where it is sought to identify a piece of land by monuments, courses or distances, when it is a question whether the means of identification establish the object with reasonable certainty. *Kohlhepp* v. *West Roxbury*, 120 Mass. 596. No existing object was to be described or identified, and the inquiry was whether the vote had expressed with sufficient clearness what was thereafter to be done. As it appeared that it had not in any way described the length of the proposed sewer, or the points from and to which it was to extend, it might properly be ruled, as matter of law, to be insufficient. It was not such a case as would have

been presented if one of the points from or to which the sewer was to run had been imperfectly described, and had required identification. We are therefore of opinion, that the order of September 9, 1871, relied on by the defendant as a legal establishment of the first three sewers, was insufficient; and that the Superior Court might properly so rule.

On September 1, 1874, Fitchburg having in the mean time received a city charter, a resolution was passed by the board of aldermen, " that the superintendent of streets be directed to proceed to build the sewer in Water Street, under the direction of the city engineer." It is under this vote that authority to assess the plaintiffs Cowdin and another is sought, if it cannot be found under the original order of September 9, 1871. This resolution is not, and does not assume to be, the location of a sewer, but a direction to proceed with the construction of one already located. Under the former order, a sewer had been built in Water Street for 989 feet. After this order, some change in grade in that before built was made, and then the Water Street sewer was extended for 776 feet farther. The resolution gives no information how far it was to be extended, and, if it be assumed that it was intended as the location of a sewer, was defective for the same reasons that have been more fully discussed in considering the order of September 9, 1871.

The plaintiff Harrigan entered with his private drain the drain on Water Street constructed in 1871 and 1872, by license from the town clerk, by which he agreed to make no claim for damages on account of the work. It was equally competent for the city to have made it a condition that he should before doing so consent to submit to the assessment which might be laid upon him. *Ranlett* v. *Lowell*, 126 Mass. 431. Not having made this one of the terms of the license, his acceptance of it cannot estop him from contending that it has never been so laid out as to entitle the city to levy an assessment therefor. The use of a structure made for the public benefit does not bind the party so using it to pay an assessment therefor, unless it is legally laid, or unless he has waived his right to object to its legality. When the license prescribed one claim, that for damages, that he should not make, it is fairly to be inferred that he

was left free to make any other proper claim in relation thereto. *State* v. *Commissioners of Streets*, 9 Vroom, 190.

Upon the whole case, it was properly held that the assessments on the estates of the plaintiffs were invalid; and that they were entitled to recover.                *Exceptions overruled.*

*F. P. Goulding & H. C. Hartwell*, for the defendant.
*E. P. Loring*, for the plaintiffs.