INHABITANTS OF LEOMINSTER *vs.* LOVANDER W. CONANT.

Worcester.    Sept. 30, 1884. — June 25, 1885.    C. ALLEN & COLBURN, JJ.,
absent.

The laying out of a sewer is not invalidated by the fact that the vote of the select-
men of the town laying it out was not recorded until seven months after the
vote was passed, and after the sewer had been constructed, the selectmen who
passed the vote having continued in office and had the custody of the records.

That the size of a sewer as laid out varies two inches in diameter from that shown
on the plan referred to in the vote of the selectmen of a town is immaterial,
upon the question of the validity of an assessment made on a landowner for the
cost of the construction of the sewer.

It is no objection to the validity of an assessment made upon a landowner, for the
cost of the construction of a sewer, that, when the sewer was laid out, the town
had not adopted any system of sewerage, although it was then authorized by
statute to do so, if such system was adopted before the assessment was made.

The provisions in the Pub. Sts. c. 50, § 7, giving cities and towns the right to adopt
a system of sewerage for a part or the whole of its territory, and to provide
that assessments under § 4 shall be made upon owners of estates within such
territory by a fixed uniform rate, based upon the estimated cost of all the
sewers therein, according to the frontage of such estates on any street or way
where a sewer is constructed, are not limited to those persons described in § 4,
who enter their drains into the sewer, or who, by more remote means, receive
benefit thereby.

After a town had adopted the system of sewerage provided for in the Pub. Sts.
c. 50, § 7, it laid an assessment on the owners of land for their proportional
part of the cost of making a sewer in a certain street, "within that part of its
territory to which the system of sewerage adopted by vote of the town" of a
certain date "applies, based upon the estimated average cost of the sewers
therein, according to the number of feet of frontage of their said estates there-
on," at a certain rate per foot of frontage.   *Held,* that it sufficiently appeared
that the assessment was laid under this system.

A warrant to the collector of taxes of a town, issued and signed by the selectmen,
after referring to a copy of an assessment made upon a landowner for the cost
of the construction of a sewer, directed the collector to collect it "according to
law," and did not direct him how to dispose of the money when he received it.
There was no informality in the proceedings of the collector under it.   *Held,*
that the warrant was valid.

DEVENS, J.    This is a writ of entry in which the demandant
seeks to recover certain premises, which were sold by the collec-
tor of taxes of Leominster for the non-payment of an assessment
laid thereon by the selectmen of Leominster for the construction
of a sewer.    The demandant's title depends upon the validity of
this assessment, and of the proceedings had to enforce the same.

While no particular form of words is made necessary by the
statute to be used by the authorities in laying out a sewer, yet

there must be such a laying out before any assessment therefor can be made; and this must be done with sufficient precision to show what the sewer is, or is to be, for which parties are liable to be assessed, or from the construction of which their estates may to some extent receive damage. *Bennett* v. *New Bedford*, 110 Mass. 433. *Sheehan* v. *Fitchburg*, 131 Mass. 523.

There can be no question that the record accurately states the action of the selectmen at their meeting on July 29, 1880; and, had it been actually made on the date which it bears, it would have constituted a sufficient laying out of the sewer in question. It was in fact recorded at a subsequent date by the authority of the selectmen who had passed it, who still continued in office and had the custody of the records, although some seven months had elapsed. An accident, such as occurred by the failure to record the vote at the time, should not deprive the town of its rights, when the means existed of correcting it, and were within the reach of the tribunal whose proceedings were defectively recorded. The authority to keep a record carries with it the right to amend it; otherwise, the rule which excludes evidence to control a record would often work great injustice. It has therefore been often exercised after a great lapse of time. *Batty* v. *Fitch*, 11 Gray, 184. *Winchester* v. *Thayer*, 129 Mass. 129. *Halleck* v. *Boylston*, 117 Mass. 469.

Nor could the rights of the landowner have been in any way prejudiced, so far as the assessment made upon him was concerned. All his right to contest this assessment was preserved, if he were dissatisfied therewith. He was entitled to appeal to a jury for a revision of the assessment within three months after receiving notice of it, and such notice was not given until a long time after the actual laying out. Pub. Sts. *c.* 50, § 6.

Whether, if the landowner had desired to apply for damages, as such application must be made within one year after the laying out of the sewer, it could be held, as against him, that the year began to run before the actual recording of the vote, need not now be considered. Pub. Sts. *c.* 50, § 3; *c.* 49, §§ 33, 105.

Nor do we think the variation of two inches in diameter between the size of the sewer as constructed, and that referred to in the vote laying out the sewer, by reference to the plan

adopted by the town, material. Such variations must often occur in actual construction.

But if the vote of July 29, 1880, be held defective, either from failure then to record the same, or for any other reason, the laying out of February 21, 1881, actually established it. On that day, which was the day when the record was actually made, and undoubtedly with the view, should their former proceedings prove defective, of thus remedying the defect, the selectmen passed a vote, which was recorded, laying it out as it was then actually constructed. While, ordinarily, a laying out should be made before any work is done, and sometimes necessarily so, where incidental injury is liable to be done to abutting estates, for the protection of the selectmen or their servants, yet, if a sewer be actually constructed and completed without a formal previous order, there is no reason why it may not then be formally laid out, and appropriate proceedings be had thereafter in regard to assessments upon those who receive benefit therefrom, or to damages to those whose estates are injured thereby. These may often be ascertained at that time most conveniently and accurately; and no previous notice to parties in interest is required in order to lay out a sewer. *Allen* v. *Charlestown*, 111 Mass. 123.

Assuming that there was a valid laying out of the sewer, we must consider whether there was a valid assessment upon the tenant, as the owner of an estate abutting on the street through which it passed. The town had not, when the sewer was laid out, whether by the earlier or later order, or when it was built, adopted any system of sewerage, although it was then authorized to do so. Sts. 1878, *c.* 232, § 3; 1879, *c.* 55. Pub. Sts. *c.* 50, § 7. Before any assessment was laid, it did adopt such a system under the existing statute, which provided that assessments might be made upon the owners of estates, within the territory for which the system was adopted, by a fixed uniform rate, based upon the estimated average cost of all the sewers therein, according to the frontage of such estates on any street or way where a sewer is constructed. The sum assessed to those whose estates abutted on this sewer was more than the cost of this particular sewer, and the assessment was made under the system thus adopted. It was not for a proportional part of the sewer which had been constructed, but according to the uniform rate which

had been determined upon for the sewerage territory. The tenant contends that this could not properly be done; that the liability to which his estate was subjected when the laying out took place was an incumbrance thereon for its proportional share of the expense of constructing that particular sewer under the Gen. Sts. *c.* 48, § 4; St. 1878, *c.* 232, § 1; Pub. Sts. *c.* 50, § 4; which could not thereafter be increased or differently assessed by including it in a sewerage territory by a system subsequently adopted. The liability to assessment is certainly an incumbrance upon the abutting estates when the sewer is laid out, although its amount cannot then be ascertained. *Carr* v. *Dooley*, 119 Mass. 294. It is a liability to an assessment in any manner which may be lawfully adopted. As the law existed, the town might lawfully provide for a system of sewerage, and prescribe the territory to which it should be applicable. It could incorporate therein this sewer, and make the expense of constructing it a part of the expense to be provided for under that system. If, before any assessment was made, it determined to adopt a general system, it might properly do so. Whatever system it might lawfully adopt, the tenant's estate was subjected to.

It is suggested that the Pub. Sts. *c.* 50, § 7, which accurately restate the Sts. of 1878, *c.* 232, § 3, and 1879, *c.* 55, apply only to those persons described in the Pub. Sts. *c.* 50, § 4, who enter their drains into the sewer, or who, by more remote means, receive benefit thereby. But the meaning is that assessments, such as are made under § 4, shall be made upon the owners of estates within the sewerage territory according to fixed uniform rates as are therein provided for. The last clause of § 7, which provides that no assessment shall be made where, "by reason of its grade level, or for any other cause," it is impossible to drain an estate into the sewer, sufficiently shows that, in all other cases, the assessment is to be laid.

It is further contended by the tenant, that, even if the system of sewerage might be adopted by the town subsequently to the laying out of this sewer, and an assessment made thereunder for its cost, this assessment does not appear to have been laid in accordance with this system. In form, the order states that the assessment is laid upon the abutters "as their proportional part of the charges of making and repairing the main drain and

common sewer constructed by said town in Main Street, within that part of its territory to which the system of sewerage adopted by vote of said town, May 9, 1881, applies, based upon the estimated average cost of all the sewers therein, according to the number of feet of frontage of their said estates thereon, at the rate of fifty cents for each foot of said frontage." These assessments, when added together, exceed the whole cost of the particular sewer. Under a system of sewerage, the abutter is to pay his proportional cost, not merely of the abutting sewer, but of constructing the system of sewers of which it forms a part. This sum had been determined by the town to be equal to fifty cents for each foot of frontage. The order sufficiently shows that the assessment is based on the estimated average cost of all the sewers in the territory, according to the number of feet of frontage of their estates thereon ; and that it was for the tenant's proportional part, as thus ascertained, that the assessment was made upon his estate.

The tenant further contends, that the warrant to the collector, by virtue of which he sold this estate, was informal and illegal, and did not authorize him to sell the estate. The form of warrant is certainly not to be commended. It would be difficult to imagine one more brief and laconic. The Pub. Sts. c. 50, § 5, prescribe that the sale of an estate shall " be conducted in like manner as sales for the, payment of taxes." The warrant should properly state what the collector is to do, and the preliminary steps to be taken by him in the collection. of the assessment. Pub. Sts. c. 11, § 63. The assessment was made by the selectmen on July 19, 1881 ; and the warrant, issued and signed by the selectmen, referring to a copy of .it, simply directs the collector to collect it " according to law." But while the warrant is thus brief, every preliminary step, as well as the sale itself, was made in conformity with that which was the legal power and duty of the collector. The tenant does not suggest a failure in any respect. The warrant which the collector had, although so informal that he might perhaps have been fully excused in refusing to execute it, was still an authority, proceeding from those entitled to issue it, to collect the tax. Its defects were those of omission. In *King* v. *Whitcomb*, 1 Met. 328, it was held that the omission fully to comply with the requirements of the Rev. Sts.

*c.* 7, § 33, that the assessors' warrant shall specify the collector's duties as prescribed by law, would not vitiate the warrant; and that, if the duties enjoined by the statutes were observed in its execution, and all the proceedings of the collector were in entire accordance with them, such proceedings would not be void or illegal. In *Barnard* v. *Graves*, 13 Met. 85, there was a distinctly erroneous direction in the warrant, but it was not acted upon; and it was held that the warrant was not rendered invalid thereby. Nor is the warrant in the case at bar invalid because it failed to direct the collector how to dispose of the money when he received it. Such money came into his hands solely as an officer claiming authority to act under the power with which he was clothed by law. He executed the warrant as a valid process, received the money under it by virtue of his office, and he cannot deny his liability to the town for it.

*Judgment for the demandant.*

*H. Mayo*, for the demandant.

*G. A. Torrey & C. W. Carter*, for the tenant.