City of Valparaiso *v.* Parker *et al.*

CITY OF VALPARAISO *v.* PARKER· ET AL.

[No, 18,215.   Filed June 8, 1897.   Rehearing denied Sept. 24, 1897.]

DRAINS.—*Sewerage.*— *Statute Construed.*— The word "drainage" as used in section 3598, Burns' R. S. 1894 (Acts 1891, p. 304), providing for the drainage of cities, includes sewerage. *pp. 380–382.*

SAME.—*Sewerage.*—*Practice.*—*Statute Construed.*—When a petition for drainage is filed in the circuit court, under the provision of section 3598, Burns' R. S. 1894 (Acts 1891, p. 304), the only question to be tried is the amount of benefits or damages to the landowners outside the city limits, provided such issue is properly presented by remonstrance. *p. 382.*

SAME.—*Viewers.*—*Objections to.*—*When Waived.*—In a proceeding to construct a city drain, under section 3598, Burns' R. S. 1894 (Acts 1891, p. 304), the failure of an interested party to appear and object to the committee appointed to assess the benefits and damages until after the committee had reported the benefits and damages to the common council, and such petition had been docketed in the circuit court, constitutes a waiver of the right to object· *pp. 383, 384.*

From the Porter Circuit Court.   *Reversed.*

*A. D. Bartholomew*, for appellant.

*N. L. Agnew* and *D. E. Kelly*, for appellees.

MONKS, J.—Appellant brought this proceeding under the act of 1891 (Acts 1891, p. 304), sections 3598-3606, Burns' R. S. 1894, to procure an outlet for the drainage of said city.   Upon a trial of said cause by the court, a judgment was rendered against appellant dismissing said proceeding.

It is set forth in the petition that the drain petitioned for commences at the outlet of the present sewer, and that it is to obtain an outlet for the waters and sewerage of said city which accumulates at and near the outlet of said sewer, and "that the drain is necessary to effectually drain and carry off the sewerage of said city; that 1265 feet of said drain is to be constructed of sewer pipe, and the remainder thereof is to be an open ditch with grade," etc.

Appellees, landowners outside the limits of the city, filed a remonstrance, setting up that the sole and only object of the proceeding was to obtain an outlet for the sewerage of said city, and not for the surface water thereof. Appellant's motion to strike out said remonstrance, and also its demurrer thereto for want of facts were overruled.

It is insisted by appellees that the act of 1891 under which said proceeding was brought does not authorize the construction of a drain to furnish an outlet for the sewers or sewerage of a city; that no power was given appellant by said act to commence a proceeding where the primary object sought is to construct a sewer to carry off sewerage and not for the drainage of surface water.

Section 1, of said act, being section 3598, Burns' R. S. 1894, provides "That whenever the common council of any city shall find it necessary for the successful drainage of said city to construct any drain as an inlet or as an outlet, leading into or out of said city, they shall cause a survey," etc. After all the preliminary steps required are taken, it is provided that the city council may file a petition in the circuit court of the county setting forth that said inlet or outlet is necessary to effectually drain said city.

We think that the word drainage as used in said act includes sewerage. Formerly the word sewer was

defined to be a fresh water trench artificially made, encompassed with banks on both sides to carry surface water into the sea.   Callis on Sewers, 80; 1 Crabb Real Prop., section 113; Woolrych's Law of Sewers, p. 1, Webster defines "sewer:" "A drain or passage to carry off water and filth under ground."   For sewerage or sewage the definition given is: "The general drainage of a city or town by means of sewers."   For drain he gives: "A trench; a water course; a sewer; a sink." In *Bennett* v. *New Bedford,* 110 Mass. 433, the court held that a structure under ground constructed by a city not only to carry off sewage from the houses and streets, but also to conduct surface water, and the waters of a natural stream is a common sewer.

It is said in 6 Am. & Eng. Ency. of Law, p. 2, that "The word 'drain' has no technical or exact meaning. As generally understood, it means an artificial channel or trench through which water or sewage is caused to flow from one point to another.   As generally understood in law the term 'sewers' has reference to the underground canal or passage by means of which cities are drained and the filth and refuse liquids are carried to the sea, river, or other place of reception."

It may be true that when the term drainage is used with reference to lands, that ordinarily drainage of waters is intended, but it is clear that when that term is used with reference to a city or town it includes sewerage, that is, such drainage is and may be used for the removal of surface and storm water, the overflow of fountains, cisterns, public hydrants, water-troughs, water-closets, sinks, all filth and refuse liquids, and the diversion of natural water courses.

It is provided in section 6 of said act, being section 3603, Burns' R. S. 1894, that "This act shall be liberally construed to promote the drainage of cities, the reclamation of wet lands and the improvement of the public health."

The removal of such water and filth is necessary to the health of a city, and such removal constitutes the drainage of a city, and the means of obtaining an outlet therefor is provided by said act. It would be a narrow construction of this statute for the drainage of cities and the improvement of the public health to limit the same to drains for the removal of surface and storm water alone, unmixed with filth and refuse liquids of any kind. Such a construction would be contrary to the express language of the statute and would defeat the intention of the legislature.

Appellant was authorized by the act in question to commence this proceeding to procure an outlet for the "waters and sewerage" of said city as set forth in said petition.

Section 1 of said act, being section 3598, supra, provides that, when the city files the petition for drainage, the same should be conclusive of every fact required to be alleged, except as to the assessment of benefits or damages, and shall be prima facie conclusive thereof. The only question to be tried in the circuit court was the amount of damages or benefits to the landowners outside the city limits, provided that issue was properly presented by remonstrance. It follows, therefore, that the court erred in overruling appellant's motion to strike out the remonstrance, and also in overruling the demurrer thereto.

The act in question does not require that a drain constructed thereunder shall commence at the city limits, but the same may be constructed from a point within the city limits. The statute (3598, supra) requires that before the petition is filed by the city, the city shall appoint a committee of three disinterested householders or freeholders of the county to view the proposed inlet or outlet and the lands without the city to be affected thereby, and assess the benefits and

damages of the said lands including the benefits to the city, and that the owners of the said lands shall be given three days' notice of when the committee will view said outlet and lands, and that they are requested to be present with a right to be heard for or against any assessment that shall be made or be proposed to be made against said lands.

After the petition had been docketed in the court below, appellees filed an affidavit that Samuel A. Campbell, one of said committee, was not a disinterested person, but was related to certain taxpayers of said city, and that he had participated in all the assessments and deliberations of said committee, and moved the court to dismiss said cause and strike the same from the docket, for the reason that the acts of said committee were void.

This motion was overruled, and this ruling is assigned as a cross-error by appellees.

Appellant contends that appellees should have presented this objection to the committee at its meeting to view the outlet and lands, and that not having done so, the objection was waived.

It is the general rule that such objections must be made at the earliest opportunity, so that the proceeding shall not be allowed to proceed to a fruitless result with accumulation of cost; and if not so made they will be deemed to be waived. *Bradley* v. *City of Frankfort,* 99 Ind. 417, 421, and cases cited; Mills on Em. Dom. (2d ed.), section 227, and cases cited; Lewis on Em. Dom., section 407.

Appellees were notified and requested to appear before said committee, and had the right to appear and protect their rights. They made no objection to said Campbell serving as a member of said committee until after said committee had reported to the common council, and the petition for the drainage of the city

had been docketed. Having failed to make said objection at the first opportunity, the same even if tenable, was waived.

The court did not err therefore in overruling appellees' said motion. It is not necessary for us to decide, and we do not decide, whether or not such relationship to one or more taxpayers of the city disqualified said Campbell to act as a member of said committee.

It is claimed by counsel for appellees that affidavits were filed showing that appellees had no knowledge of the relationship of Campbell to said taxpayers until after the committee filed their report.

We have examined the record and have been unable to find any such affidavits.

The judgment is reversed with instructions to sustain appellant's motion to strike out the remonstrance filed October 23d, 1896, and for further proceedings in accordance with this opinion.