THOMAS M. SMITH *vs.* ABINGTON SAVINGS BANK.

Suffolk.   March 16, 1898. — May 19, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Covenant against Encumbrances — Sewer Assessment — Validity of Laying out of Sewer — Evidence.*

Upon the trial of an action on a covenant in a deed of land against encumbrances except " the taxes assessed for the year 1893," evidence offered by the defendant that the written contract of sale in pursuance of which the deed was given stated that a good and clear title should be given except the taxes assessed on May 1, 1893, was properly excluded.

When in proving the laying out of a sewer in a town it becomes necessary to show that the town voted to adopt a plan and system of sewerage made by a civil engineer, it is competent, after the town clerk has testified that he cannot find the report among his records, to admit a letter, produced from other custody, signed by the engineer, addressed to one of the committee of the town, and proposing a system of sewerage which the town clerk testifies he has no doubt was the report adopted.

Where the report of a civil engineer recommending a plan of sewerage for a town, which is in evidence, refers to an accompanying plan or map, and the town clerk testifies that he cannot find the original plan in his office, an office plan of the engineer, a copy of which he testifies was delivered to the town, is competent, and the evidence will warrant a finding that it was the map or plan referred to in the report.

An article in a warrant for a town meeting, " To see what action the town will take in regard to some system of sewerage, and raise and appropriate money for the same," will warrant a vote of the town to borrow money for the construction of the sewer.

A town, under an article in the warrant, "To see what action the town will take in regard to some system of sewerage," adopted the engineer's report, which stated that "the northerly side of B. Hill will drain into the sewer described above through A. Avenue." B. Avenue was situated in this district. *Held*, that the laying out of a sewer on B. Avenue, the course of which through that avenue was indicated by a red line on a plan accompanying the report, was sufficiently definite and certain.

In an action upon a covenant against encumbrances in a deed of land to recover the amount of a sewer assessment unpaid at the time of the conveyance, and which the grantee afterward paid, it is unnecessary for the plaintiff, if he proves that the sewerage system was laid out according to law, also to prove the validity of the assessment.

It is not necessary to give notice to the party to be charged by a sewer assessment before the same is levied.

After a town had voted to adopt a plan of sewerage, and to authorize the selectmen to levy an assessment of seventy per cent, based upon the average cost of all sewers, it voted, under an article "To see if the town will vote to lay a sewer assessment of seventy per cent of the total cost of all sewers," that it would "ratify the doings of the selectmen in levying the sewer assessment of seventy per cent." *Held*, that there was evidence from which it might be found that the selectmen had previously purported to levy the assessment on an estate so as to constitute an encumbrance thereon within the covenant against encumbrances in a deed of such land which was given three months before the last vote of the town.

CONTRACT, upon a covenant against encumbrances in a deed conveying land in the town of Revere.

The declaration alleged that, on July 7, 1893, the defendant executed and delivered to the plaintiff a deed wherein it covenanted that the premises described therein were "free from all encumbrances made or suffered by it except the taxes assessed for the year 1893," and that the plaintiff, relying on the covenant, received the deed and paid the consideration therefor; that the premises were not free from all encumbrances, but were subject to an assessment for the construction of a sewer authorized by a vote of the town of Revere on February 8, 1892, of which at the time of the conveyance to him the plaintiff was ignorant; and that the plaintiff had been required to pay and had paid the assessment. Answer: 1, a general denial; 2, that the sewer assessment was illegal and void, and could not have been reassessed, and that the proceedings of the town on which the assessment was based were illegal and void; 3, that the plaintiff paid the sewer assessment without right and without any legal obligations so to do.

After the former decision in this court, reported 165 Mass. 235, the case was tried in the Superior Court, without a jury,

before *Hammond*, J., who allowed the following bill of exceptions.

The defendant, by a quitclaim deed dated July 7, 1893, conveyed to the plaintiff a parcel of land on Bellingham Avenue in Revere, and covenanted that the same was free from all encumbrances "except the taxes assessed for the year 1893." At the time of the conveyance the estate was subject to the encumbrance of a lien of an unpaid assessment for the construction of a sewer voted by the town of Revere on September 23, 1893.

The town clerk of Revere, called by the plaintiff, produced his records for the town meeting held on October 12, 1891, the warrant for which contained the following article: "To see what action the town will take in regard to some system of sewerage, and raise and appropriate money for the same." Under this article the town voted to adopt a system of sewerage, and appointed a committee to report a plan therefor. At an adjourned town meeting, held December 14, 1891, the report of the committee was accepted, and it was voted that the system proposed and planned by Herbert T. Whitman, civil engineer, be adopted. It was also voted that the committee be joined to and act with the selectmen in preparing the details, and in employing an engineer to prepare plans and specifications, and to act with the selectmen in all matters pertaining to the construction of the sewerage system as proposed, the joint committee to advertise for bids, and report at an adjourned meeting. At such adjourned meeting, held February 8, 1892, on recommendation of the committee the town under article 10 of the warrant, voted to borrow money for the construction of the sewerage system, and that all money received from sewer assessments should be deposited in a bank or trust company to liquidate the sewer debt as it became due, and further voted, "That the selectmen and committee having the matter in charge be authorized and instructed to proceed and construct a system of sewerage with the least possible delay practically in accordance with plans heretofore submitted by H. T. Whitman, C. E., and adopted by the town, making only such changes in pipes, etc., as circumstances may seem to justify upon a more studied consideration of the same, and that the selectmen be, and are hereby instructed, to levy an assessment upon all owners of real estate

within such territory where sewers are laid, of seventy per cent, based upon the average cost of all the sewers therein, according to chapter 50 of the General [Public] Statutes."

At a town meeting held on September 23, 1893, pursuant to a warrant containing the following article: " To see if the town will vote to lay a sewer assessment of seventy per cent of the total cost of all sewers constructed under vote of February 8, 1892, or that may be constructed hereafter, based upon the area of the depth of one hundred feet on all estates bordering on streets or ways where sewers are laid, according to chapter 50 of the Public Statutes."

On recommendation of the board of selectmen it was voted " To ratify the doings of the selectmen in levying the sewer assessment of seventy per cent of total cost of all the sewers."

The town clerk having testified that he had, after search among the town records, been unable to find the original of the engineer's report, or his plan prepared in December, 1891, was shown a letter from the engineer to one Curtis, a clerk of the committee, dated December 12, 1891, which he testified he had no doubt was the report made by the committee. The letter was admitted, subject to the exception of the defendant. It outlined a definite plan of sewerage, with estimates of the cost, and referred to accompanying plans and a map, and stated that " The northerly side of Beachmont Hill will drain into the sewer described above through Atlantic Avenue, and into the tank through Ocean Avenue." Bellingham Avenue, on which lay the plaintiff's land, was in this district.

The engineer was called, and produced his office plan, a copy of which he testified was delivered to the town of Revere in the fall of 1891 or spring of 1892. This was admitted, subject to exception, and the engineer testified that the course of the sewer through Bellingham Avenue was indicated on it by a red line, and that Bellingham Avenue was included in the plan which he originally gave.

The collector of taxes for the town of Revere testified that the warrant for the sewer assessment was dated September 23, 1893, and that the assessment was paid on November 16, 1893.

One of the selectmen of Revere was called and produced the sewer assessment book, from which he read the oath of the se-

lectmen to the truth of the " list of the names of all the persons known to us who are liable for taxation in the town of Revere for the seventy per cent of the cost of the system of sewerage built by the vote of the town passed February 8, 1892, and assessed by us by virtue of the vote of the town passed September 23, 1893."

The defendant then offered to show that the written contract of sale, in pursuance of which the deed in question was given, stated that a good and clear title should be given, to be free from all encumbrances except taxes assessed on May 1, 1893; but the testimony was excluded, and the defendant excepted.

The defendant requested the judge to rule; 1, that upon the pleadings it is necessary for the plaintiff to prove (a) that he was obliged and compelled to pay the sewer assessment; (b) that the assessment was legal and valid in all respects, or if invalid in any respect that it could be reassessed; (c), that the defendant, its tenants or lessees, had notice of the assessment; 2, that upon the evidence the plaintiff cannot recover; 3, that if he can recover he is entitled to only nominal damages; 4, that the tax bill presented to and paid by the plaintiff creates no presumption that the sewer tax was legally assessed; 5, that the sewer assessment is a tax assessed for the year 1893, and comes under the exception in the covenant in the deed to the plaintiff; 6, that, as matter of law, the description of the sewers to be built contained in the votes of the town was too indefinite, and the assessment is invalid; 7, that, as matter of law, there was no legal laying out of the sewer, and there could be no legal assessment levied therefor; 8, that, as matter of law, if the defendant or its tenants or lessees had no notice of the laying of this assessment, the assessment was invalid, and the plaintiff cannot recover; 9, that, as matter of law, the evidence shows that no legal or valid assessment was or could have been made for the construction of this sewer after the passage of the votes of the town; 10, that under article 10 of the warrant the town had no power to borrow money for the construction of the sewer; 11, that the town, having voted to borrow money to construct the sewer, had no power to levy an assessment, under chapter 50 of the Public Statutes, for the purpose of placing the money thereby raised in some bank or

trust company to pay debts accruing years afterward; 12, that under the warrant, the town had no power to levy an assessment, under chapter 50 of the Public Statutes, to pay debts maturing years afterward; 13, that the vote of the town instructing the selectmen to levy an assessment was too indefinite, and no assessment thereunder could be valid; 14, that the vote of the town, September 23, 1893, was illegal, and did not operate to legalize the assessment paid by the plaintiff, for, (a) it did not follow the article in the warrant; (b) the act of the selectmen in laying an assessment could not be ratified if it was originally made without legal authority.

The judge declined to give the requests numbered 2 to 7, and 9 to 14, and gave the request numbered 1, but substituted in 1 (a) the word "paid" for the words "was obliged and compelled to pay," and in 1 (c), and in request numbered 8, substituted the words "party to be charged" for the word "defendant," and inserted the word "legal" before the word "notice."

The judge found for the plaintiff, and the defendant alleged exceptions.

*J. F. Simmons,* for the defendant.

*J. H. Colby & E. A. Bayley,* for the plaintiff, submitted the case on a brief.

HOLMES, J.   This is an action upon the covenant against encumbrances in a deed conveying land in the town of Revere. The encumbrance relied on is an assessment for the construction of a sewer, voted by the town of Revere on September 23, 1893. The deed was dated July 7, 1893, and the covenant declared on excepted "the taxes assessed for the year 1893." It already has been decided that the encumbrance alleged is not within the exception. *Smith* v. *Abington Savings Bank,* 165 Mass. 285. The case now has been tried, and the plaintiff has had a verdict, subject to exceptions taken by the defendant, which are before us.

We may as well dispose first of an offer of evidence intended to affect the construction of the covenant. The defendant offered to show that the written contract of sale in pursuance of which the deed was given stated that a good and clear title should be given except the taxes assessed on May 1, 1893. Perhaps it would be enough to say that we do not perceive how this

different language can be thought more favorable to the defendant than that which was used in the deed. But if it were more favorable, it could not affect the construction of language used at a later time by the parties, unless coupled with evidence that they actually intended to embody the meaning of the earlier document in the later one. But evidence of actual intent is not admissible to change the construction of written instruments if otherwise plain, for the reason that what a court must look for is not what the parties had in their minds, but the meaning of the words according to the general usage of speech. *Tucker* v. *Seaman's Aid Society*, 7 Met. 188, 205. Reformation, not construction, is the means for meeting such a mistake as supposed. When it is said that the intent of the parties or of a testator is the lodestar, etc., all that is meant is that in interpreting a particular sentence you may look at the general scheme and the habit of language disclosed by the instrument, and may ascertain the facts under which the party acted to qualify what might be the result of the particular words if they were taken alone.

In order to prove the encumbrance the plaintiff undertook to prove the laying out of the sewer. It appeared that on December 12, 1891, and February 8, 1892, the town voted to adopt a plan and system of sewerage made by H. T. Whitman, a civil engineer. The town clerk testified that he did not find the report among his records, but stated that he had no doubt that a letter produced, signed by Herbert T. Whitman, addressed to one of the committee of the town, and proposing a system of sewerage, was the report adopted. This letter was admitted, and the defendant excepted. We see nothing in the cases cited which suggests that secondary evidence of the report was not admissible in a collateral proceeding, — if indeed this was secondary evidence. *Harris* v. *Whitcomb*, 4 Gray, 433, 435. *Howard* v. *Stevens*, 3 Allen, 409, 410. But it does not appear clearly not to have been the original report, although coming from other custody than that of the town clerk, with whom it belonged.

The report was dated December 12, 1891, and referred to accompanying plans and a map. The town clerk testified that he could not find the original in his office. The engineer then was called and produced his office plan, a copy of which he testified

was delivered to the town of Revere in the fall of 1891, or spring of 1892. This was admitted, subject to exception. This evidence warranted a finding that it was the map or a plan referred to in the report.

The map and report were objected to on the further ground that they show that there was no valid laying out of the sewer, and several rulings were asked and refused to that effect. Two objections are urged. In the first place it is said that the vote of the town to borrow money for the construction of the sewer was not warranted by the article in the warrant for the town meeting. The article was, " To see what action the town will take in regard to some system of sewerage, and raise and appropriate money for the same." It is not pointed out why this was not sufficient, or why, if it was not sufficient to justify the scheme adopted for paying for the sewer, the distinct vote to lay out the sewer was bad. The plaintiff needs to maintain the validity of only the later vote. Next it is said that the vote to lay out the sewer was too indefinite and uncertain. The language of the report adopted by the town, so far as it refers to the immediate neighborhood of the plaintiff's land is, " The northerly side of Beachmont Hill will drain into the sewer described above through Atlantic Avenue, and into the tank through Ocean Avenue." Bellingham Avenue, on which lay the plaintiff's land, was in this district, and, as we understand the testimony, the course of the sewer through it was indicated by a red line upon the plan. So far as we can judge, the sewer in that place might be found to have been laid out definitely enough. *Bennett* v. *New Bedford*, 110 Mass. 433. *Sheehan* v. *Fitchburg*, 131 Mass. 523. *Commonwealth* v. *Abbott*, 160 Mass. 282. But perhaps this particular detail is less important than the question whether the system as a whole which the town voted to construct was sufficiently defined, since the assessment voted was to be based upon the average cost of all the sewers, under Pub. Sts. c. 50, § 7. *Leominster* v. *Conant*, 139 Mass. 384. Taking this to be the proper question, the answer is similar to what we have said about the sewer in Bellingham Avenue. The report shows that a definite plan was proposed, with estimates of the cost. It would seem that the plan appeared in detail upon a map, the original of which was produced. The

plan was adopted subject to such changes in pipes as further study proved necessary. These facts were evidence at least that the lay-out was not too vague.

If the system was laid out according to law, it is not necessary to inquire into the validity of the assessment. " The fact that the assessment is invalid does not remove the lien or encumbrance upon his land. The proper officers could, by proceedings in due form, correct the errors and reassess the same amount upon the land, and, if it was not paid, sell the land." *Coburn* v. *Litchfield*, 132 Mass. 449, 451. However, the objections urged to the assessment do not impress us. The chief one is that no notice was given to the parties to be charged. It is true that notice was not given before the assessment was levied, but that is not required. Notice was given to the plaintiff after it was levied. *Allen* v. *Charlestown*, 111 Mass. 123. Then it is said that the vote of the town was bad because there was no sufficient article in the warrant. But after the first vote of 1892 adopting the plan, and also voting that the selectmen should levy an assessment of seventy per cent, based upon the average cost of all the sewers, an article was put into the warrant for a meeting, " To see if the town will vote to lay a sewer assessment of seventy per cent of the total cost of all sewers constructed under vote of February 8, 1892," etc. Under this article it was voted " to ratify the doings of the selectmen in levying the sewer assessment of seventy per cent," etc. There was evidence from which it might have been found that the selectmen previously had purported to levy the assessment on the estates concerned. The vote appears to us to have followed the warrant, and to have been valid. We have dealt with the main arguments addressed to us, and have examined the record. We see no error entitling the defendant to a new trial.

*Exceptions overruled.*