WILLIAM GUILD *vs.* C. P. SAMPSON.

Suffolk.     March 5, 1919. — March 31, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Agency,* Broker's commission. *Contract,* Construction, Effect of custom. *Custom. Evidence,* Of custom. *Landlord and Tenant. Words,* "Rent."

The word "rent," as used in an ordinary contract between a landowner and a real estate broker in regard to procuring a tenant, means the amount to be paid for the use and occupation of the premises and does not include the amounts to be paid by the lessee as taxes or for cost of improvements.

Where in answer to an inquiry of a landowner addressed to a real estate broker as to what the "usual commission," which the broker was to receive for procuring a lessee, would be, the broker informed him that it would be one per cent of the gross rent, without intimating that the brokers' schedule of the Real Estate Exchange provided for any additional charge, that statement became the broker's interpretation of the contract of agency and excluded any other construction more favorable to him.

In the case in which the points above stated were decided, it also was *said* that, while under certain circumstances the word "rent" may be so construed in a written lease as to include taxes, cost of improvements and other payments to be made by the lessee, still such an interpretation *is not to be adopted in the absence of a clear intention of the parties to that effect expressed in the lease.*

Assuming that a certain custom of real estate brokers in Boston exists and is so general and universal as to be admissible in evidence to explain a doubtful contract in an action by a Boston real estate broker to recover a commission, evidence of such a custom never can be admitted to control or vary the terms or the legal effect of a contract expressing clearly the intention of the parties.

CONTRACT by a real estate broker to recover $491.14 as a commission for procuring a lessee for a building of the defendant numbered 3 and 3 A on Somerset Street in Boston. Writ in the Municipal Court of the City of Boston dated July 3, 1917.

The evidence at the trial in the Municipal Court is described in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings:

"1. The representations made by the plaintiff to the defendant as to the amount of his charge preclude the plaintiff from relying upon any custom of the brokers' trade in charging commissions.

"2. No commission on either the expense of the contemplated improvements or upon future taxes is recoverable in this action.

"3. The defendant was entitled to rely upon the plaintiff's explanation of what the usual broker's commission was under the circumstances. If the plaintiff intended to expand the meaning commonly given to the word 'rent' to include expense of alterations and taxes, fairness to the defendant required a clearer statement to that effect. The brokers' board's schedule of usual commission, from which the plaintiff refreshed his recollection in testifying, itself recognized the necessity of clearness by explicitly referring to taxes and even the precise method of computing them. The plaintiff was bound to do likewise if he intended to claim an addition to a commission on the rent of $2,400 yearly.

"4. The plaintiff's statement of his intended charge must be given its natural meaning and the recovery can be only upon the $2,400 per year.

"5. By the defendant's inquiry, what the usual broker's commission was, the plaintiff was put on notice that the defendant did not know. If the court finds ambiguity in the information

given in reply, the defendant is entitled to the benefit of the doubt and to the construction most favorable to him that is consistent with its form.

"6. The brokers' usage, if proved, to charge as part of his commission a percentage either on cost of improvements upon the building which he undertakes to let, or upon taxes not actually received by the owner, is a local and particular usage, which must be proved to have been known by the defendant. The defendant, not having known of the custom, is not bound thereby and can be held in this action only for fair compensation for the services rendered."

The judge refused to make any of these rulings. He found the alleged custom in Boston to be proved, and accordingly found that the meaning of one per cent on the gross rent was one per cent on $2,400 and on taxes and on the interest on the cost of alterations, and found for the plaintiff in the full amount claimed. At the request of the defendant, who alleged that he was aggrieved by the refusals to rule and by the admission of the evidence of custom, the judge reported the case to the Appellate Division.

The Appellate Division made an order that the report be dismissed; and the defendant appealed.

*C. P. Sampson*, pro se.

*J. Wasserman*, for the plaintiff.

CROSBY, J. This is an action of contract to recover $491.14 alleged to be due the plaintiff as a commission for procuring a lease of a building in Boston. There was evidence that the defendant orally accepted the services of the plaintiff; that the latter stated he would expect a commission of one per cent on the gross rent for his services; and that the defendant assented thereto.

Afterwards there was correspondence between the parties, which resulted in the employment of the plaintiff to procure a tenant for the building, to whom the defendant executed a written lease in which it was provided that the lessee should pay the taxes during the term. It also contained the following provision: "Yielding and paying as rent twenty-four hundred dollars, yearly, together with eight per centum per annum on the total expense of said improvements and alterations so paid by said lessor, by equal monthly payments." After the preliminary interview, at

which the plaintiff asked the defendant if a long lease was taken would he make alterations in the building, the defendant wrote the plaintiff in reply a letter dated May 23, 1917, in which he stated: "For a long term I prefer to lease the whole building and will consider an offer from a responsible party of $2500 net plus 6% on cost of alterations." On May 24, 1917, the plaintiff wrote the defendant that he had offered the building at a rent of $2,500 per year net, and had obtained an offer from his prospective lessee at certain rents differing in the different years during the term; and stated that "the rentals mentioned above are net to you except for the usual broker's commission." On receipt of this letter the defendant then inquired of the plaintiff what the usual broker's commission was, and the plaintiff under date of May 29 wrote in reply in part as follows: "Permit me to call your attention to the rates established by the Real Estate Exchange and Auction Board and published in great detail by them in their schedule of Brokers'. Commissions, reading in part as follows: Leases under three years on amount of first year's rent 2½%; Three years or over on gross amount of rent 1%. I trust this will give you the desired information." Afterwards on the same date, the defendant wrote the plaintiff that "Twenty-four hundred per year net is my lowest figure plus the 8% on cost of alterations to be agreed on by the parties up to seven thousand dollars (7,000)." A lease was thereafter executed by the defendant to the lessee for thirteen years.

The question is whether the word "rent" includes taxes and cost of alterations and improvements during the term, or is limited to $2,400 a year during that period.

The plaintiff at the trial, subject to the defendant's exception, offered evidence of a general custom "in the brokers' trade in Boston . . . that taxes and interest on cost of alterations, when paid by a lessee, were to be treated as part of the rental in computing a broker's commission of 1% thereon." The trial judge found that such a custom existed and, also, that the meaning of one per cent on the gross rent was one per cent on $2,400 and on the taxes and cost of alterations paid by the lessee, and found for the plaintiff.

It thus appears that after the plaintiff wrote the defendant that the rents mentioned would be net except for the usual

brokers' commission, the defendant inquired what that commission was. Up to that time nothing had been said about alterations or improvements, or that they would be made, and therefore no contract express or implied relating to a commission on their cost could be found to exist. And the same is true as to a commission on taxes, as they were not mentioned and it did not appear whether they were to be paid by the lessor or the lessee. The inquiry as to what the usual brokers' commission was, undoubtedly was for the purpose of enabling the defendant to know definitely the extent of his liability therefor. The purpose of the inquiry must have been equally apparent to the plaintiff, when in reply he referred to the rates of the Real Estate Exchange and stated that for leases of three years or more the rate on the gross amount of rent was one per cent. While the plaintiff referred to the rates so published as "reading in part as follows," it is to be inferred that the only portion which he deemed material to the defendant's request for information was that part to which he expressly referred. The plaintiff was the defendant's agent in procuring a tenant; and the latter was not obliged to examine the schedule, but under the circumstances was entitled to rely upon the representation made and to assume that the schedule of rates so far as material was mentioned in the plaintiff's letter. *Holst* v. *Stewart,* 161 Mass. 516, 523. *Quinn* v. *Burton,* 195 Mass. 277, 279. *Rollins* v. *Quimby,* 200 Mass. 162.

Nor is it necessary that there should have been any intent to defraud the defendant. *O'Donnell* v. *Clinton,* 145 Mass. 461, 462. The contract between the parties was in clear terms and free from ambiguity. There was no uncertainty as to the commission which the defendant would be required to pay for the plaintiff's services. The word "rent" as used by the parties is to be construed in accordance with its usual and ordinary meaning; so construed it means the amount to be paid for the use and occupation of the premises, and does not include the amount to be paid by the lessee as taxes or for cost of improvements. *Smith* v. *Abington Savings Bank,* 171 Mass. 178, 184. When in answer to the defendant's inquiry as to what the usual commission would be, the plaintiff informed him that it would be one per cent of the gross rent, without intimating that the schedule provided for any additional charge, that statement was the plaintiff's inter-

pretation of the contract and excluded any other construction. The defendant's letter of May 23 refers to the rent as the net amount to be paid to him; the plaintiff's letter in reply informed the defendant that the rents referred to "are net to you except for. the usual broker's commission;" and in the defendant's reply under date of May 29 it is plain he insisted that $2,400 net should be paid to him and that it was his "lowest figure." It is manifest from the entire evidence that as matter of law the word "rent" is used in accordance with its natural usage.

While undoubtedly "rent" may be so construed in a written lease as to include taxes, cost of improvements and other payments to be made by the lessee, still such an interpretation is not to be adopted in the absence of a clear intention of the parties to that effect expressed in the lease. *Hodgkins* v. *Price,* 137 Mass. 13. *Kites* v. *Church,* 142 Mass. 586.

If we assume that the custom of brokers in Boston was so general and universal as to be admissible to explain a doubtful contract, it was inadmissible in the case at bar and should have been excluded. A custom or usage can never be admitted to control or vary the terms or the legal effect of a contract expressing in clear terms the intention of the parties. *Boardman* v. *Spooner,* 13 Allen, 353, 360. *Brown* v. *Foster,* 113 Mass. 136, 139. *Menage* v. *Rosenthal,* 175 Mass. 358, 361. *Cesana* v. *Johnson, ante,* 444.

The report recites that the defendant admitted he was liable for $312 and offered to pay that amount, but the plaintiff declined to accept .it. It follows that the defendant's first, second and fourth requests should have been given, and that the order dismissing the report must be reversed and judgment entered for the plaintiff for $312, without interest.

*Ordered accordingly.*